UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

JUAN JOSE EGAS VALENCIA,
M.D.,

        Plaintiff,

v.                          Civil Action No. 2:16-6597

LOGAN GENERAL HOSPITAL, LLC,
d/b/a Logan Regional Medical
Center,

        Defendant.


MEMORANDUM OPINION AND ORDER


        Pending is defendant Logan General Hospital, LLC,
d/b/a Logan Regional Medical Center's ("Logan General") motion
to dismiss, or in the alternative, to stay the proceedings and
compel arbitration, filed July 29, 2016.


                            I.


        Plaintiff Juan Jose Egas Valencia, M.D. ("Dr. Egas")
instituted this action by filing a complaint in the circuit
court of Logan County, West Virginia on July 22, 2016.  In the
complaint, Dr. Egas alleges that he was employed by Logan
General as an interval pain management physician in Logan, West
Virginia.  Compl. at ¶ 6.  As part of his job, Dr. Egas

regularly saw patients "who were seeking treatment for the sole purpose of obtaining prescription medications." Id. at ¶ 7. When Dr. Egas refused to prescribe these patients medications, many of them would become verbally and physically violent towards him. Id. at ¶ 8. He repeatedly requested that Logan General provide security for his safety as well as the safety of his staff and other patients, but these requests were continually denied. Id. at ¶ 10. Due to Logan General's failure to provide security, Dr. Egas contends that his work environment was not safe. Id. at ¶ 13. As a result, Dr. Egas says he was forced to submit his resignation on June 28, 2015, effective July 24, 2015. Id.

Dr. Egas alleges that he was constructively discharged by Logan General by virtue of its failure to maintain a reasonably safe environment for him and his staff, which caused a "working environment so intolerable that no reasonable person would have continued to work in these conditions," in violation of W. Va. Code § 21-3-1. Id. at ¶¶ 15-20. He seeks compensatory damages, including lost wages and benefits; emotional distress damages; punitive damages; attorney fees and costs; prejudgment interest on all amounts claimed; and all other relief the court deems appropriate. Id. at ¶ 20.

On July 22, 2016, Logan General filed a timely notice of removal invoking the jurisdiction of the court on the basis of diversity jurisdiction.  Its motion to compel arbitration promptly followed.

According to Logan General, the Physician Employment Agreement ("the Employment Agreement") Dr. Egas signed when he was employed by Logan General includes a binding arbitration agreement that requires him to arbitrate his constructive discharge claim.  The arbitration clause in the Employment Agreement states:

> Except as to the provisions contained in Articles VIII and IX,[1] the exclusive jurisdiction of which shall rest with a court of competent jurisdiction in the state where the hospital is located, any controversy or claim arising out of or related to this Agreement, or any breach thereof, shall be settled by arbitration in the Community, in accordance with the rules and procedures of alternative dispute resolution and arbitration established by the Alternative Dispute Resolution Service of the American Health Lawyers Association ("AHLA"), and judgment upon any award rendered may be entered in any court having jurisdiction thereof.  Such arbitration shall be conducted before a single AHLA arbitrator selected jointly by the

---

[1] Due to a confidentiality provision contained in the Employment Agreement, Articles VIII and IX are redacted in the copy of the Employment Agreement filed with the court.  <u>See</u> Employment Agreement.  Logan General seems to suggest that these articles relate to "restrictive covenants contained in the Employment Agreement."  Def. Memo. in Supp. of Mot. to Compel Arbitration at 3.  Dr. Egas does not refute this contention, and the parties do not treat these provisions as relevant to this dispute.

> parties, or in the event the parties are unable to agree,
> designated by the AHLA.

Exhibit to Def. Mot. to Compel Arbitration at 4-10 ("Employment

Agreement") at 10.  Logan General also contends that it has

already commenced arbitration against Dr. Egas for his

resignation which, it says, constitutes a breach of the

Employment Agreement, and that Dr. Egas could and should have

filed a counterclaim in that action alleging constructive

discharge.  Def. Memo. in Supp. of Mot. to Compel Arbitration at

1.  In response, Dr. Egas argues that his claim of constructive

discharge does not "arise out of or is related to the Employment

agreement," and thus is not subject to the arbitration clause.

Pl. Resp. to Mot. to Compel Arbitration at 2-3.


                                II.


        The Federal Arbitration Act ("FAA") was enacted in

1925 and codified as Title 9 of the United States Code in 1947.

Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991).

Its purpose was to "reverse the longstanding judicial hostility

to arbitration agreements . . . and to place [them on] the same

footing as other contracts."  Id.  The FAA provides that

arbitration clauses in contracts concerning interstate commerce

are "valid, irrevocable, and enforceable, save upon such grounds

as exist at law or in equity for the revocation of any

                                 4

contract." 9 U.S.C. § 2 (2012). The FAA reflects "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "Accordingly, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (internal citations and quotations omitted). Thus, a district court must grant a motion to compel arbitration when "a valid arbitration agreement exists and the issues in a case fall within its purview." Id. (citing United States v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001)).

In this circuit, a party may compel arbitration under the FAA if it can demonstrate:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

Id. at 500-01 (internal citations and quotations omitted).

Dr. Egas only disputes whether the second element is met in this case. The first element, the existence of a dispute, is met because Dr. Egas and Logan General dispute over

5

whether the arbitration clause is applicable to this matter and presumably over whether Dr. Egas was unjustifiably discharged. The court finds that the third element, that the agreement affects interstate commerce, is met because Logan General is a Delaware limited liability company conducting business in Logan, West Virginia,[2] where it employed Dr. Egas.  Finally, the fourth element is satisfied because Dr. Egas has thus far refused to arbitrate this dispute, as evidenced by his opposition to Logan General's motion to compel arbitration.

        With respect to the second element, Dr. Egas does not dispute that the Employment Agreement he signed contains a valid, binding arbitration clause with Logan General, but instead argues that the arbitration clause does not cover the claim brought by him.  Pl. Resp. to Mot. to Compel Arbitration at 2-3.  Specifically, Dr. Egas contends that the arbitration clause, which states that it covers "any controversy or claim arising out of or related to this Agreement, or any breach thereof," does not apply to his claim against Logan General for

---

[2] Logan General Hospital, LLC's sole member is LifePoint Hospital Holdings, LLC, a Delaware limited liability company.  Notice of Removal at ¶ 4.  LifePoint Hospital Holdings, LLC's sole member is Historic LifePoint Hospitals, LLC, a Delaware limited liability company.  Id. at ¶ 5.  LifePoint Hospital Holdings, LLC's sole member is LifePoint Health, Inc., a Delaware corporation with its principal place of business in Brentwood, Tennessee.  Id. at ¶ 6.

constructive discharge under W. Va. Code § 21-3-1, because, he asserts, it is unrelated to the Employment Agreement, and thus falls outside the scope of the arbitration clause.  Id.

Logan General argues that Dr. Egas' claim "indisputably arises out of and relates to the Employment Agreement" for three reasons, stated as follows: (1) the Employment Agreement sets forth the circumstances under which that employment relationship could end; (2) Dr. Egas attempted to invoke the termination provisions of the Employment Agreement when he resigned his employment; and (3) the damages he seeks in the lawsuit are based upon what he claims he would have earned if he had remained employed under the Employment Agreement. Def. Reply in Supp. of Mot. to Compel Arbitration at 2.

Whether parties must arbitrate a dispute is determined as a matter of contract, and thus "a party cannot be required to submit to arbitration any dispute to which he has not agreed so to submit."  AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (internal citations and quotations omitted).  The Supreme Court has noted that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute." Id. at 648.

Here, the arbitration clause in the Employment Agreement states that "any controversy or claim arising out of or related to this Agreement, or any breach thereof, shall be settled by arbitration." Employment Agreement at 10. The Supreme Court and our court of appeals have confirmed that the language "arising out of or relating to" the underlying contract in an arbitration agreement is a broad clause. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967) ("arising out of or relating to" is a "broad arbitration clause"); Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996) (finding that the clause "arising out of or related to" is a "broad arbitration clause"); J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988) (determining first that any differences between an arbitration clause providing for arbitration of "[a]ll disputes arising in connection with" and one providing for arbitration that "may arise out of or in relation to" the contract were "immaterial . . . and largely semantic," and then determining that the arbitration clause "encompass[ed] a broad scope of arbitrable issues"). When an arbitration clause is classified as broad, as is the case here, there is a strong

8

presumption of arbitrability, so that "[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." AT & T Techs., Inc., 475 U.S. at 650 (internal citations and quotations omitted).

In analyzing whether the arbitration clause applies to Dr. Egas' claim, it is noted that our court of appeals has found that the "sweeping language of a similarly broad arbitration clause 'did not limit arbitration to the literal interpretation or performance of the contract[, but] embraced every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." Am. Recovery Corp., 96 F.3d at 93 (citing J.J. Ryan & Sons, 863 F.2d at 321) (emphasis omitted).  Accordingly, the court "must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim." See id. (citing J.J. Ryan & Sons, 863 F.2d at 321).

Dr. Egas contends that Logan General violated W. Va. Code § 21-3-1 by failing to maintain a reasonably safe workplace due to its refusal to hire security to protect him and his staff from violent patients despite his numerous requests to do so.

<u>See</u> Compl. at ¶¶ 6-13.  He alleges that this created an intolerable working environment, requiring him to resign his employment, which amounted to constructive discharge.  <u>Id.</u>  In his complaint, Dr. Egas cites to <u>Harless v. First Nat'l Bank in Fairmont</u>, 162 W. Va. 116, 124, 246 S.E. 2d 270, 275 (W. Va. 1978), for the proposition that "the absolute right to discharge an at will employee must be tempered by the further principle that where the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge."  Compl. at ¶ 15.  Dr. Egas goes on to argue that the "public policy principle" that Logan General violated is contained in W. Va. Code § 21-3-1, for its failure to maintain a reasonably safe work environment.  <u>Id.</u> at ¶¶ 16-19.

         The court agrees with Logan General that Dr. Egas' claim significantly relates to the Employment Agreement and is thus arbitrable.  Unlike <u>Harless</u>, Dr. Egas was not an at-will employee that Logan General could fire subject only to the public policy limitation adopted by the West Virginia Supreme Court of Appeals.  Under the Employment Agreement, Dr. Egas was to be employed by Logan General for five years, with compensation, leave and benefits set by the Agreement.  <u>See</u> Employment Agreement at 4.  Moreover, the Employment Agreement

set out only three ways for the Agreement and the employment relationship with the parties to end.  First, Logan General could terminate the Agreement for cause either: thirty days after its written notice to Dr. Egas notifying him of a "material breach, default or violation of any provision" of the Agreement, if he failed to cure the material breach, default or violation within that time; or immediately upon written notice to Dr. Egas for any of the reasons enumerated in the Agreement.[3] Id. at 8-9.

Second, Dr. Egas could terminate the Agreement for cause either: thirty days after written notice to Logan General of its "material breach, default or violation of any provision" of the Agreement, if it did not cure such material breach, default or violation during that time; or immediately upon written notice by Dr. Egas for: "bankruptcy or receivership of [Logan General] or revocation or suspension of [Logan General] from the Medicare or Medicaid Programs or any successor program."  Id.

_____

[3] Logan General could terminate the Employment Agreement immediately upon written notice to Dr. Egas for any of the following conditions, inter alia, attributed to him: disability, loss of license to practice, loss of Medicare/ Medicaid privileges, conviction of felony, under-performance, drug abuse, failure to maintain medical records, or loss of insurance coverage.  Employment Agreement at 8-9.

Finally, either party could terminate the Agreement without cause, upon ninety days' prior written notice.  Id. at 9.  At the time Dr. Egas resigned, he stated it would be effective twenty-six days later, but in puzzling fashion, he stated that he was giving sixty days' notice. [4]  It is noted further that the resignation letter makes no mention of an unsafe workplace, but rather states his decision to resign is based on his belief that "the change will be beneficial to my long term career goals and objectives."  See Exhibit to Def. Mot. to Compel Arbitration at 11 ("Dr. Egas' Resignation Letter").  The letter is otherwise harmonious and ends with his statement, "[I]t has been a pleasurable learning experience working as part of Logan Regional Medical Center and I wish nothing but success to your future endeavors."  Id.  It appears that only after Logan General instituted arbitration proceedings against Dr. Egas to recover more than $125,000 for breach of the Employment Agreement, did he then file a complaint in this case alleging an unsafe workplace bringing about his constructive

---

[4] In Dr. Egas' resignation letter, dated June 28, 2015, he states that he is offering sixty days' notice of his resignation.  But, the letter states that his resignation was to be effective July 24, 2015, meaning that he only gave Logan General twenty-six days' notice of his resignation.  See Compl. at ¶ 13; Dr. Egas' Resignation Letter.

discharge.  Def. Memo. in Supp. of Mot. to Compel Arbitration at 1.

Dr. Egas states that he "has lost and will continue to lose income and benefits" as a result of the constructive discharge.  Compl. at ¶ 20.  He asks, as damages, among other things, for compensatory damages "including lost wages and benefits."  Id.  The lost income and benefits that Dr. Egas seeks as damages are presumably, at least in part, the wages and benefits he would be entitled to under the Employment Agreement if not for his allegedly constructive discharge.  Dr. Egas must thus refer to the Employment Agreement to prove the damages to which he is entitled as a result of his alleged constructive discharge.

Inasmuch as Dr. Egas alleges that he was required to terminate his employment, which was established under the Employment Agreement, as a result of Logan General's failure to provide security to him and his employees, and because he seeks damages, at least in part, for wages and benefits set out in the Employment Agreement, the court finds that Dr. Egas' claim bears a significant relationship to the Employment Agreement.  See Am. Recovery Corp., 96 F.3d at 93.

13

All four elements of the <u>Adkins</u> test are thus met. First, a dispute exists over whether the arbitration clause is applicable to Dr. Egas' claim and over whether Dr. Egas was unjustifiably discharged by Logan General.  Second, as discussed more thoroughly above, the Employment Agreement includes an arbitration agreement that covers Dr. Egas' claim of constructive discharge.  Third, the Employment Agreement containing the arbitration clause affects interstate commerce because Logan General is a Delaware limited liability company conducting business in Logan, West Virginia.  Fourth, Dr. Egas has refused to arbitrate his claim, which is evidenced by his opposition to Logan General's motion to compel arbitration.

Accordingly, the arbitration clause in the Employment Agreement covers Dr. Egas' claim and the court must compel arbitration.

### III.

For the foregoing reasons, it is ORDERED:

1.   That Logan General's motion to dismiss, or in the alternative, to stay the proceedings and compel arbitration be, and hereby is, granted as set forth below;

2.     That plaintiff Juan Jose Egas Valencia submit to arbitration his claim raised in this case in accordance with the terms of the Employment Agreement; and

3.     That this action be, and it hereby is, dismissed subject to reopening upon motion of either party if needed in light of the conclusion reached in arbitration.

The Clerk is directed to transmit copies of this order to counsel of record and any unrepresented parties.

ENTER: November 1, 2016

John T. Copenhaver, Jr.
United States District Judge

15